IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PROGRESSIVE EMU, INC., f/k/a JOHNSON EMU, INC., } } | | |
| Plaintiff, } } | CIVIL ACTION NO. 12-AR-01079-S | |
| v. } } | | |
| NUTRITION & FITNESS, INC., } } | | |
| Defendant. } | | |

**MEMORANDUM OPINION**

Before the court is the motion of defendant, Nutrition & Fitness, Inc., ("NFI") to dismiss or alternatively to transfer. Plaintiff, Progressive Emu, Inc., f/k/a Johnson Emu, Inc., ("Pro Emu") responded and NFI replied.

**Facts**

Pro Emu is an Alabama corporation with its principal place of business in Jefferson County, Alabama. Pro Emu is engaged in raising emu birds and the procurement of emu oil for resale. NFI is a North Carolina corporation with its principal place of business in Fayetteville, North Carolina. NFI is a marketer of various health products.

Pro Emu developed a blue emu cream ("Blue Emu") using emu oil and blue coloring and other ingredients. In an effort to introduce Blue Emu to a mass market, Pro Emu hired Bill Kazmaier, who, in turn, introduced Pro Emu to NFI. The business plan was to form an exclusive relationship in which Pro Emu would manufacture and NFI

would market Blue Emu and other potential products using emu oil. The terms of the joint venture were negotiated in Alabama.

Pro Emu and NFI entered into an operating agreement ("2002 Agreement") in 2002 which included: NFI was required to use only Pro Emu's oil in all products containing emu oil; Pro Emu agreed that NFI could jointly own all current or future trademarks related to products containing emu oil; NFI agreed to purchase from Pro Emu specific quantities of the Blue Emu product at specific prices by specific dates; Pro Emu granted NFI a worldwide licence to distribute, market, and advertise any products containing Pro Emu's oil.  The parties operated under this Agreement from May 2002 until March 2003.  NFI caused the Blue Emu trademark to be registered with the U.S. Patent and Trademark Office for the benefit of the joint venture.  Blue Emu was sold to Wal-Mart and other mass markets, which caused a large increase in sales of Blue Emu.

The Agreement was amended in January 2003 ("2003 Agreement") to include, among other things, that: NFI could select third parties to manufacture "Emu Products" using Pro Emu's oil; Pro Emu agreed to sell emu oil to NFI for NFI's use in manufacture of Emu Products; NFI had no right to purchase oil it did not need to manufacture Emu Products; NFI's exclusive remedy for any failure by Pro Emu to supply oil was to temporarily suspend Pro Emu's right to sell emu oil to NFI and NFI could then purchase oil from third parties; NFI agreed to pay for all marketing and promotional

expenses; Pro Emu was to receive royalties of 8% of net revenues for Blue Emu and 5% of net revenues[1] for other Emu Products.

In January 2004, the Agreement was amended to permit Pro Emu to sell emu oil to any third parties except those selling products to "Mass Retail Markets", and NFI was granted the right of first refusal to distribute any new Pro Emu products to Mass Retail Markets. By letter dated September 20, 2011, NFI demanded that Pro Emu refrain from selling emu oil to all third parties, including those not in the Mass Retail Market.

On March 28, 2012, Pro Emu filed suit against NFI in Alabama state court alleging breach of contract and seeking a declaratory judgment for certain intellectual property rights and the buying and selling of emu oil. On April 10, 2012, NFI properly removed the case to this court. Exactly one day later, on April 11, 2012, NFI filed a mirror image complaint against Pro Emu and its CEO, Chris Binkley ("Binkley"), in the Eastern District of North Carolina.[2] On May 25, 2012, the E.D.N.C., Hon. James C. Fox, held a hearing on Pro Emu's motion to dismiss or transfer venue. At the conclusion of said hearing, Judge Fox found that the "first-filed"

---

[1]Net revenues was defined as total revenues reduced only by discounts and refunds.

[2]In its suit, NFI alleges breach of contract, breach of covenant of good faith and fair dealing, unfair trade practices, tortious interference with contracts and business relations, and a declaratory judgment for certain intellectual property rights. These claims all relate back to the contract that is in dispute in this court.

rule is applicable, and he stayed the E.D.N.C. proceedings to allow this court to decide the appropriate forum and whether an exception to the first-filed rule is applicable. Judge Fox's reasoning is very convincing.

## Discussion

NFI argues that Pro Emu's complaint is due to be dismissed because (1) it is barred by the statute of limitations, (2) it is an improper anticipatory declaratory judgment action, and (3) it fails to state a claim under Fed.R.Civ.P. 12(b)(6), or alternatively, NFI argues the action should be transferred under 28 U.S.C. § 1404(a) to the E.D.N.C.

**Venue**

Although under 28 U.S.C. § 1404(a) the court may transfer this action "for the convenience of the parties and witnesses, in the interest of justice," the court normally accords deference to the plaintiff's choice of forum, and the burden is on the movant to show that the suggested forum of the E.D.N.C is more convenient and/or would serve the interest of justice. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989)(per curiam). There has been no such showing.

"The first-to-file rule is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed

in different jurisdictions." *Merial Ltd. v. Cipla Ltd.*, 2012 WL 1948879 at *11 (11th Cir. May 31, 2012). The burden is on the movant to establish that the suggested forum is more convenient. Furthermore, the party objecting to jurisdiction in the first-filed forum has the burden of proving "compelling circumstances" to warrant an exception to the first-filed rule. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005)(citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982)).

NFI argues that Pro Emu's complaint is an improper anticipatory declaratory judgment action "designed to dictate the forum in which the true plaintiff's claims, i.e., NFI's claims, are to be adjudicated." (Doc. 20, at 2). Where there has been a filing of a declaratory judgment action, one equitable consideration is whether the action was filed in anticipation of suit in another forum. *See Manuel*, 430 F.3d at 1136. The court is entitled to take this into account in determining whether compelling circumstances exist to warrant an exception to the first-filed rule. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). Even if the court finds that the filing was anticipatory, "this consideration does not transmogrify into an obligatory rule mandating dismissal." *Id*. In its complaint, Pro Emu clearly asserts a cause of action for breach of contract **in addition** to its request for declaratory judgment.

Pro Emu's filing was not improperly anticipatory. NFI has not presented anything to suggest that NFI had threatened Pro Emu with specific legal proceedings prior to Pro Emu's filing of it's complaint on March 28, 2012. To the contrary, Pro Emu has written a letter charging NFI with a contract violation. NFI's counsel stated at the May 25, 2012 hearing in the E.D.N.C. that the parties had no discussions during previous few months, that NFI had not indicated it would file suit, and that NFI had not learned of its alleged breach of contract until the Alabama lawsuit was filed. Although there "undoubtedly was a reasonable apprehension that a controversy existed sufficient to satisfy the constitutional requirements for a declaratory judgment action, this is not equivalent to an imminent threat of litigation." *Manuel*, 430 F.3d at 1137. "Otherwise, 'each time a party [seeks] declaratory judgment in one forum, a defendant filing a second suit in a forum more favorable to defendant could always prevail under the anticipatory filing exception.'" *Id*. (internal citation omitted). Here, there has been no showing that Pro Emu's complaint constitutes an improper anticipatory declaratory judgment action or improper forum shopping.

NFI further argues that the E.D.N.C. is a more convenient forum for the parties and the witnesses because NFI's principals and employees reside in the E.D.N.C. Yet, there has been no showing to tip the scales of convenience to the North Carolina

forum.  The contract was executed in Alabama.  The contract was allegedly breached in Alabama.  The contract is the centerpiece of both lawsuits.  Alabama's connection to this action is neither slight nor manufactured.  Apart from being the forum where the action was first filed, Pro Emu is headquartered and operates out of Alabama.  Additionally, many, if not most, of the potential witnesses are located in Alabama, and most of the documents relating to this action would likely be found in Alabama.  There has been no showing of compelling circumstances here to justify an exception to the first-filed rule.  In fact, it is NFI which first invoked the jurisdiction of this court by its timely removal.  Pursuant to the first-filed rule, this court is the appropriate forum, and insofar as the motion to dismiss seeks a transfer of venue, it will be denied.

**Statute of Limitations**

NFI argues that Count III of the complaint should be dismissed under the statute of limitations. Count III of the complaint seeks declaratory judgment with respect to intellectual property rights, namely, that Pro Emu owns the trade secrets rights associated with Blue Emu cream, that Pro Emu and NFI jointly own the Blue Emu trademark and trade dress, and that upon breach of the parties Agreement, Pro Emu is entitled to all intellectual property rights associated with Blue Emu.

NFI argues that Alabama's six-year statute of limitations for

"actions under any simple contract" applies to Count III - Declaratory Judgment - Intellectual Property Rights. *See* Ala. Code § 6-2-34(9). Actions for breach of contract arise at the time breach occurs. *Stephens v. Creel*, 429 So. 2d 278, 280 (Ala. 1983). NFI alleges the "breach of contract" claim accrued at the time NFI registered the Blu Emu trademark. Pro Emu replies that its trademark claims are not breach of contract claims and thus are not subject to Alabama's six year statute of limitations. Rather, Pro Emu alleges that it developed the product and owned the Blue Emu trademark and product when NFI and Blue Emu entered into a joint venture agreement. Therefore, Pro Emu argues that its ownership interest is a property right, and not a contract right. Consequently, Pro Emu correctly argues that its property right is not subject to Alabama's six-year statute of limitations for contracts.

**Anticipatory Declaratory Judgment**

See prior discussion under "Venue", *supra*.

**Failure to State a Claim**

To survive NFI's motion to dismiss, Pro Emu's complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Thus, in considering the motion to dismiss, the court accepts all factual allegations as true.

NFI asks the court to assume some of Pro Emu's facts are not

true because Pro Emu did not attach evidentiary support to its complaint. However, pursuant to Fed.R.Civ.P. 8, the plaintiff is supposed to allege a short and plain statement of operative facts, not evidentiary support for the alleged operative facts.

**1) Breach of Contract**

NFI argues that Pro Emu's claim for breach of contract is not based upon the terms of the written agreement between the parties, and, if the case is not dismissed or transferred, NFI wants the court to construe agreements outside the pleadings. This would be proper under a motion for summary judgment but not a motion to dismiss. *See* Fed.R.Civ.P. 12(d).

Pro Emu's complaint properly alleges breach of contract. Pro Emu alleges that NFI agreed to pay royalties to Pro Emu on Blue Emu sales in the amount of eight percent (8%) of total revenue, less discounts and refunds. Pro Emu further alleges that NFI was required to pay for all marketing, advertising, and any other expenses. Pro Emu claims that NFI breached the agreement by deducting advertising, marketing, and promotional and other expenses from the total revenue upon which Pro Emu's royalty was based, and therefore, Pro Emu was harmed by NFI's wrongful deductions. Additionally, Pro Emu alleges that NFI breached the contract by paying per gallon of emu oil instead of per barrel, and consequently, Pro Emu was damaged by NFI's reduction in payment. There are enough factual allegations to raise a reasonable

expectation that discovery will reveal evidence of the necessary elements of Pro Emu's claims.

### 2) Declaratory Judgment - Oil Sales

NFI argues that Count II of the complaint relies not upon allegations of fact, but rather generalized, unsupported statements of the agreement and its amendments.  Pro Emu asserts a claim for declaratory judgment alleging there is a justiciable controversy regarding whether 1) Pro Emu is entitled to sell oil to third parties outside the Mass Retail Market, 2) NFI is not entitled to purchase emu oil from Pro Emu that NFI does not require withing sixty (60) days for use in the manufacture of Emu products, 3) NFI may refuse consent to Pro Emu to sell oil to Mass Retail Markets if it does not require the oil for its manufacturing within sixty (60) days, 5) NFI's exclusive remedy for any failure of Pro Emu to provide NFI with oil ordered is to purchase the product from third parties, and 6) NFI's wrongful deductions from Pro Emu's royalty payments constitute a material breach that excuses Pro Emu's future performance.  Pro Emu has stated a plausible claim, or claims, against NFI for declaratory judgment, and thus NFI's motion to dismiss will be denied.

### 3) Declaratory Judgment - Intellectual Property Rights

NFI argues that Pro Emu's complaint fails to identify any particular intellectual property rights associated with Blue Emu products.  However, under Count III, Pro Emu sufficiently claims

-10-

ownership interests in the Blue Emu trademark, trade secret, and trade dress. Pro Emu has again stated plausible claims against NFI for declaratory judgment.

**Accounting**

In its responsive brief, Pro Emu does not dispute, or even respond to, NFI's arguments with respect to a dismissal of Count IV - Accounting. Pro Emu provides nothing in support of its Accounting claims, and thus, as a matter of law, abandons all such claims. *See Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998)(arguments not clearly raised in the briefs are considered abandoned); *Continental Technical Services, Inc. V. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991)("An argument not made is waived...."). This is not intended to preclude discovery with respect to the calculation of damages.

## Conclusion

For the foregoing reasons, NFI's motion to dismiss will be denied except as to Count IV. Insofar as the motion seeks a transfer of venue, the motion will be denied.

NFI claims that this is nothing more than an anticipatory declaratory judgment action, but if offers nothing to show that Pro Emu **knew** it would soon be sued in the Eastern District of North Carolina. The court is unconvinced that compelling circumstances exist to justify not only an exception to the well-established first-filed rule, but also to justify the abrogation of the court's

informed discretion.

A separate order effectuating this opinion will be entered.

DONE this 26th day of June, 2012.

```
                              _____
                              WILLIAM M. ACKER, JR.
                              UNITED STATES DISTRICT JUDGE
```