FILED
2013 Apr-26  PM 03:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

*Burr & Forman LLP*
*Draft - February 6, 2003*

## SALES, MARKETING AND OPERATING AGREEMENT

THIS SALES, MARKETING AND OPERATING AGREEMENT (this "Agreement") is entered into as of the 1st day of January, 2003 (the "Effective Date"), between Johnson Emu, Inc. ("JEI"), an Alabama corporation, having its principal place of business at 155 Daniels Chapel Road, Eva, Alabama 35621, and Nutrition & Fitness, Inc. ("NFI"), a North Carolina corporation, having its principal place of business at 704B Festus Avenue, Fayetteville, North Carolina 28303.

### RECITALS

A.  JEI is engaged in the business of manufacturing and selling emu oil and other emu products.

B.  NFI desires to have manufactured, sell, market, and promote certain products containing emu oil that will be manufactured by third parties selected by NFI (the "Emu Products") and to purchase emu oil from JEI for use in the Emu Products.

C.  JEI desires to sell emu oil to NFI for use in the manufacture of the Emu Products.

D.  NFI is currently purchasing emu oil from JEI for use in the manufacture of certain emu oil based products.

### AGREEMENT

In consideration of the premises and the obligations contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by JEI and NFI (each a "Party" and, collectively, the "Parties"), the Parties agree as follows:

1.  Product and Marketing.

    1.1  JEI agrees to sell emu oil to NFI under the terms of this Agreement for use by NFI in the manufacture of the Emu Products. Subject to the limitations set forth in Section 2 hereof, during the term of this Agreement, JEI will supply NFI's requirements for emu oil needed for the manufacture of Emu Products by NFI or its contract manufacturer.

    1.2  Subject to the terms and conditions set forth herein, during the term of this Agreement, JEI hereby grants NFI, and NFI hereby accepts, an exclusive, non-transferable right and license to use the JEI trademarks listed in Exhibit A hereto (the "JEI Marks") on the Emu Products. NFI acknowledges, however, that JEI currently markets and sells similar emu oil products under various brand names and that subject to the restrictions set forth in Section 3 below, JEI will continue to do so during the term of this Agreement and may use the JEI Marks in connection with the sale and marketing of such products. NFI shall submit to JEI for its review any

labels or marketing materials bearing the JEI Marks. JEI shall have ten (10) days to review such materials and advise NFI of any changes required to bring the materials into compliance with JEI's trademark policies. JEI's approval rights extend only to the use of the JEI Marks, and JEI's approval shall not be unreasonably withheld. If no comments are received by NFI from JEI within such ten (10) days, the materials shall be deemed approved by JEI. JEI shall not sell any product under a trade name owned by NFI or confusingly similar to a trade name owned by NFI. Nothing in this Agreement shall be construed as granting to JEI any express or implied license to any NFI trademarks or other NFI intellectual property.

1.3   NFI shall be responsible for any representations or warranties made by NFI or any of its employees, representatives or agents to any customer, prospective customer or other party concerning the Emu Products, other than warranties specifically provided by JEI in writing to NFI. NFI will be responsible for designing and paying for labels for the Emu Products.

1.4   During the term of this Agreement, except as set forth in Section 2.2 hereof, and except for purchases from its contract manufacturers who manufacture products using emu oil purchased pursuant to this Agreement: (a) NFI agrees not to acquire, contract with or otherwise become affiliated with or purchase emu oil or products containing emu oil from any business or entity other than JEI that sells or produces emu oil or products containing emu oil and agrees not to compete with JEI in the production or manufacture of emu oil; and (b) NFI shall use exclusively emu oil from JEI in all products that it manufactures or sells that contain emu oil.

1.5   NFI agrees that all marketing or promotional activity undertaken by it in order to market or promote the Emu Products shall be at NFI's expense. All package labels for all products sold by NFI that contain emu oil purchased from JEI shall include a trademark in the form provided by JEI indicating that the product contains emu oil from JEI; provided, however, that if at any time NFI determines that the use of the JEI trademark is detrimental to an Emu Product, JEI will cooperate with NFI to modify such mark or to take other actions necessary to remove any such detrimental impact.

2.   Orders and Payment.

2.1   Except as otherwise provided herein, orders for emu oil will be placed and filled in accordance with JEI's standard order placement and fulfillment procedures in effect from time to time and will be delivered to NFI's contract manufacturer in the continental United States as directed by NFI in writing.

2.2 NFI will provide JEI with at least thirty (30) days written notice prior to the required delivery date. Notwithstanding the thirty (30) day notice, JEI will use its best efforts to fulfill all orders as quickly as reasonably possible. In the event that JEI is unable to supply any order within sixty (60) days following the order date, NFI shall have the right, notwithstanding the terms of Section 1.4 of this Agreement, to order emu oil from a third party; provided, however, that at such time as JEI provides reasonable evidence to NFI that it can supply NFI with its requirements, NFI shall have no further right to purchase emu oil from third parties unless JEI shall again become unable to supply NFI's requirements. NFI shall not place orders for emu oil in quantities greater than are reasonably expected to be needed to allow its contract manufacturer to maintain on hand an inventory of emu oil reasonably expected to be required to fulfill its requirements for sixty (60) days. The remedies provided by this Section 2.2 shall be NFI's exclusive remedies for any failure by JEI to provide the quantities of emu oil required by NFI hereunder.

2.3 The purchase price of emu oil to be paid by NFI to JEI shall be one hundred eighteen and 18/100 dollars ($118.18) per gallon, payable upon delivery to NFI's contract manufacturer.

2.4 In addition to the purchase price of the emu oil provided for in Section 2.3, NFI shall pay JEI an overriding royalty payment as follows:

(a) *Super Strength Blue Emu Cream.* Eight percent (8%) of NFI's total revenue received from the sale of Super Blue Emu Cream or any similar product, net of discounts and refunds ("Net Revenues");

(b) *Other Products.* Five percent (5%) of NFI's Net Revenues from sales of all products other than Super Strength Blue Emu Cream sold by NFI containing emu oil.

Such royalty payments shall be paid with respect to Net Revenues for each month during the term of this Agreement to JEI no later than the close of business on the tenth (10th) day after the end of each calendar month.

2.5 JEI will be responsible for all shipping and handling costs and insurance for the shipment of all orders of emu oil to NFI's contract manufacturer. The risk of loss shall transfer to NFI upon the delivery of the emu oil to NFI's contract manufacturer.

3. Exclusivity.

3.1 Subject to the qualifications set forth below, during the term of this Agreement, NFI shall have exclusive worldwide marketing, distribution and advertising rights for all products containing emu oil supplied by JEI.

Except as specifically set forth in Section 3.2, JEI shall not market, sell or distribute emu oil to any third party.

3.2 JEI is a party to certain contracts that give marketing, distribution or advertising rights with respect to emu oil and products containing emu oil to parties other than NFI. These contracts shall remain in effect until their terms expire. On expiration of each such contract, JEI and NFI shall review such contract, and jointly determine whether it shall be renewed. In addition, if either JEI or NFI desires JEI to contract with any new marketing or advertising company or any new distributor with respect to emu oil products, JEI and NFI will jointly approve any such new contract. Neither NFI nor JEI shall unreasonably withhold approval of any such contract renewal or new contract.

4. Term.

4.1 The Initial Term of this Agreement shall commence as of the Effective Date and shall continue until December 31, 2005. The term of this Agreement shall be automatically renewed at the end of the original term for successive one (1) year periods, unless either Party gives written notice of termination at least sixty (60) days prior to the end of the original term or any renewal term.

4.2 Either Party shall have the right to terminate this Agreement for cause at any time by written notice (a "Termination Notice") to the other if: (a) the other Party is in default (as specified in Section 5 below) under this Agreement; (b) the other party has failed to make any payment of amounts owed hereunder when due; or (c) any federal, state or local government agency or legal authority with jurisdiction to regulate products containing emu oil passes any regulation or otherwise acts in a manner that would materially impair such Party's ability to perform its obligations under this Agreement. Upon delivery of any Termination Notice, the defaulting Party shall have ninety (90) days to cure such default; provided, however, that in the event of a termination because of a default described in clause (b) above, the defaulting party shall have thirty (30) days to cure such default, and a termination because of a default described in clause (c) above or in Section 5.1(b) below shall be effective upon delivery of such notice, and the defaulting party shall have no right to cure. If such default has not been cured by the end of the relevant cure period, this Agreement shall terminate at the end of such period immediately without further notice.

5. Default.

5.1 A Party shall be in default hereunder if (a) such Party fails to comply in any material respect with any term or condition under this Agreement or

    (b) such Party ceases to carry on its business, is adjudged bankrupt or insolvent or commits any other act of bankruptcy.

  5.2 If the Party in default has not cured such default within the time period specified in Section 4.3, the notifying Party shall be entitled, in addition to any other rights it may have under this Agreement or otherwise under law, to terminate this Agreement as provided in said Section 4.3.

6. <u>Confidentiality; Non-Solicitation.</u>

  6.1 Each Party acknowledges that, in connection with this Agreement, it will acquire or have access to Confidential Information of the other Party. For the purposes of this Agreement, "Confidential Information" shall mean and include, without limitation, any proprietary information related to a Party's products and business activities, including, without limitation, business outlooks, pricing, trade secrets, data, inventions, techniques, product designs, strategies, research and development data, marketing plans and third-party confidential information. Notwithstanding the foregoing, however, "Confidential Information" shall not include information which: (a) is publicly available at any time during this Agreement through no fault of the receiving Party; (b) is already known on a nonconfidential basis by the receiving Party prior to receipt from the disclosing Party, as evidenced by written records; (c) is disclosed under requirement of law; (d) is rightfully obtained by the receiving Party from third parties without restrictions; or (e) is independently developed by the receiving Party.

  6.2 During the term of this Agreement and thereafter, each Party agrees to hold the Confidential Information of the other Party in strict confidence, not to disclose such information to others or use it in any way, commercially or otherwise, and not to allow any unauthorized persons access to it, without the prior written consent of the disclosing Party. Each Party shall disclose the Confidential Information of the other Party only to such Party's employees, agents or contractors with a need to know who have been advised of the confidential and proprietary nature of the Confidential Information.

  6.3 Each party's obligations under this Section 6 shall survive the termination of this Agreement. Upon the termination of this Agreement for any reason, each Party shall return or destroy all Confidential Information of the other Party.

  6.4 During the term of this Agreement and for a period of two (2) years thereafter, neither party shall solicit, either directly or indirectly on behalf of itself or any other entity, any employee of the other party to become an employee of the soliciting party or of any company or other entity with whom the soliciting party is affiliated.

7. Intellectual Property Rights and Trade Secrets.

   7.1 NFI acknowledges that the JEI Marks and any other trademarks associated with the business of JEI or containing any reference to "Johnson Emu" or "Johnson Emu Oil", including trademarks, service marks, slogans, logos, designs and other similar means of distinction owned by JEI, including all goodwill pertaining thereto, whether relating to current products or trademarks associated with products or other elements of the business developed in the future, shall be the sole property of JEI. NFI may use and display such trademarks only in the manner and for the purpose authorized by JEI and only during the term of this Agreement. JEI reserves the right to add to, change or discontinue the use of any trademark on a selective or general basis at any time. NFI shall not use any trademark or trade name of JEI in any corporate, partnership or business name without JEI's prior written consent. Upon the termination of this Agreement, NFI shall cease all further use in its business of trademarks or trade names identical to or confusingly similar to those of JEI except that NFI shall have the right to sell off any products containing emu oil purchased from JEI displaying such JEI Marks then in NFI's inventory and any such products then in process.

   7.2 Each Party also acknowledges and agrees that all Confidential Information of the other Party is and shall remain the property of such other Party.

8. Warranties.

   8.1 JEI warrants that it has the right to sell emu oil to NFI and to perform its obligations under this Agreement. JEI further warrants that the emu oil to be sold to NFI pursuant hereto shall be free of material defects and shall meet or exceed the standards published from time to time by the American Oil Chemist Society as they relate to oil to be used in products sold by NFI.

   8.2 Except as specifically set forth in Section 8.1 above, JEI makes no warranties or representations as to the emu oil to be sold hereunder or the Emu Products, whether to NFI or to any third party.

   8.3 JEI HEREBY DISCLAIMS ALL IMPLIED WARRANTIES RELATING TO EMU OIL OR EMU PRODUCTS INCLUDING BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

   8.4 NFI warrants that it has the right to purchase the emu oil being sold to it by JEI pursuant to this Agreement and to perform its obligations under this Agreement.

9. Miscellaneous.

9.1 Independent Contractor. The relationship of JEI and NFI is that of independent contractors. Nothing in this Agreement shall be construed to create any other type of relationship. NFI acknowledges that it has no power or authority to act on behalf of JEI as its agent and that its authority is limited to the activities specified hereunder as an independent contractor in accordance with the terms of this Agreement.

9.2 Notices. Any notices or other communications required or permitted to be given or delivered under this Agreement shall be in writing and shall be sufficiently given if delivered personally or if delivered by overnight commercial courier or by first class mail, postage prepaid, to the Party to whom the notice or communication is directed at the address specified above. Any notice or other communication shall be deemed to be given when it is personally delivered or as of the date it is delivered to the commercial courier or placed in the mail, as the case may be, as herein specified; provided that a notice not given as herein specified, if it is in writing, shall be deemed to be delivered upon actual receipt by the Party to whom it is addressed.

9.3 Assignment. This Agreement shall be binding upon the Parties and their respective legal successors and assigns. Neither Party may assign this Agreement, or any of its rights and obligations hereunder, to a third party without the prior written consent of the other Party. Notwithstanding the foregoing, each Party shall have the right to assign this Agreement in connection with a sale of a controlling interest in the capital stock or other equity interest of such Party, a sale of all or substantially all of the assets of such Party or pursuant to a merger or consolidation to which such Party is a party.

9.4 Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia without regard to the choice of law provisions thereof.

9.5 Counterparts. This Agreement may be executed in counterparts, each of which when so executed shall be deemed to be an original, but all of which shall constitute one and the same instrument.

9.6 Modification. This Agreement shall not be modified and/or amended except in writing executed by JEI and NFI.

9.7 Indemnification.

(a) NFI hereby agrees to indemnify, release, defend and hold harmless JEI, its owners, shareholders, employees and assigns from and against any and all costs, expenses or liabilities of every kind (including reasonable attorneys' fees and expenses) with respect to or arising out of (i) any claim or action by any third party which

may develop as a result of any representation or warranty made or claimed to have been made by NFI in connection with NFI's activities under this Agreement (except warranties made by JEI in Section 8.1 above and passed on to NFI's customers by NFI), (ii) any infringement by NFI of any trademark, patent or other intellectual property right of a third party (except any infringement arising from the emu oil supplied by JEI or the JEI Marks), (iii) any breach of this Agreement or any action or failure to act by NFI, or (iv) any personal injury, death or property damage arising directly from use of the Emu Products not caused directly by the emu oil sold to NFI by JEI.

(b) JEI hereby agrees to indemnify, release, defend and hold harmless NFI, its contract manufacturer, and their respective owners, shareholders, employees and assigns, from and against any and all costs, expenses or liabilities of every kind (including reasonable attorneys' fees and expenses) with respect to or arising out of (i) any claim or action by any third party which may develop as a result of any representation or warranty made or claimed by such third party to have been made by JEI with respect to the emu oil sold by JEI to NFI under this Agreement, (ii) any claim that the emu oil sold to NFI by JEI pursuant hereto or the JEI Marks infringes any trademark, patent or other intellectual property right of a third party, or (iii) any personal injury, death or property damage arising directly from use of emu oil sold by JEI to NFI.

9.8 <u>Survival</u>. Upon termination of this Agreement the provisions of Sections 6, 7, 8, and 9 shall survive such termination.

9.9 <u>Severability</u>. The provisions contained in this Agreement are severable, and the unenforceability of any provision shall not affect the enforceability of any other provision.

9.10 <u>Entire Agreement</u>. This Agreement, together with the Exhibits attached hereto, constitutes the entire agreement between the parties and supersedes and cancels any and all prior agreements, written or oral, between them relating to the subject matter hereof, including, without limitation, that certain JEO-NFI Operating Agreement Letter of Intent between the parties dated May 10, 2002.

IN WITNESS WHEREOF, this Agreement is entered into by the undersigned as of the date set forth above.

JOHNSON EMU, INC.

By: _____

Its: _____CEO_____

NFI

NUTRITION & FITNESS, INC.

By: _____Danny Chromore_____

Its: _____PRESIDENT/CEO_____