# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **PROGRESSIVE EMU, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **2:12-cv-01079-AKK** |
| | ) | |
| **NUTRITION & FITNESS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The court has before it Progressive Emu's Motion to Alter, Amend or Vacate Directed Verdict and Interlocutory Orders, Renewed Motion for Judgment as a Matter of Law and/or Motion for New trial, doc. 258. This motion follows a three day jury trial during which the court granted directed verdicts in favor of Nutrition and Fitness, Inc. with regard to Pro Emu's claim for unpaid royalties related to alleged off-the-book sales and NFI's claim that it overpaid Pro Emu for certain orders of emu oil. Doc. 255 at 1–2. Pro Emu's breach of contract claim for unpaid royalties on reported sales in March and April 2012 was submitted to the jury, which found against Pro Emu. *Id.* at 2. Accordingly, the court entered judgment in favor of NFI on that claim. *Id.*

Pro Emu now argues that it is entitled to (1) either a new trial or judgment as a matter of law with respect to its breach of contract claim for unpaid royalties from March and April 2012; and (2) a new trial on its damages claim based on off-the-book sales. These arguments are now fully briefed; docs. 258-1 and 273, and ripe for review.[1] Upon careful consideration of the record and the parties' briefs, Pro Emu's motion is due to be denied.

## I.    STANDARD OF REVIEW

A court applies "precisely the same" standard for granting a Rule 50(b) motion for judgment as a matter of law as it does for "'granting the pre-submission

---

[1] Pro Emu has also filed a reply brief, doc. 279, which, as has become routine in this case, NFI has moved to strike, doc. 281, necessitating another round of briefing and a request for attorneys' fees from Pro Emu. *See* Docs. 283 and 284. Setting aside the parties' arguments, Pro Emu's reply brief, doc. 279, fails to follow the court's page limitations. *See* Uniform Initial Order at http://www.alnd.uscourts.gov/content/judge-abdul-k-kallon. Counsel for Pro Emu are experienced practitioners in this District and the court is confident they are aware of the existence of this order which, among other things, strictly limits reply briefs to a maximum of five pages. Pro Emu's reply brief is over 28 pages long, nearly as long as its initial brief. And, as even the most cursory review of the docket reveals, Pro Emu has consistently ignored this court's scheduling orders and otherwise failed to comply with the court's instructions. The court has shown great patience and restraint in dealing with these repeated failings. However, the court refuses to further tolerate Pro Emu's blatant indifference to its orders. Accordingly, the court will disregard Pro Emu's reply brief, in its entirety, for failure to comply with the Uniform Initial Order. *See Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004) (explaining the court's managerial powers are essential "to maintain control over its docket . . . [and are] necessary for the court to administer effective justice and prevent congestion"); *Colville v. Jacks*, No. CV-05-BE-1979, 2008 WL 11376582, at *1 n.1 (N.D. Ala. Mar. 19, 2008) (striking portion of brief that exceeded the page limits established by the court).

Additionally, the court declines Pro Emu's request that it sanction NFI for moving to strike its reply brief. Doc. 283 at 1. While Pro Emu may disagree with NFI on the legal underpinnings of NFI's motion to strike, that does not make NFI's position so unreasonable that it is properly subject to the extraordinary remedy provided by 28 U.S.C. § 1927. *See Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (noting that "[f]or sanctions under section 1927 to be appropriate, something more than a lack of merit is required").

motion [under 50(a)].'" *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007)). Accordingly, "in ruling on a party's renewed motion under Rule 50(b) after the jury has rendered a verdict, [the] court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence." *Chaney*, 483 F.3d at 1227. In other words, when "considering a Rule 50(b) motion after the jury verdict, 'only the sufficiency of the evidence matters. The jury's findings are irrelevant.'" *Cadle v. GEICO Gen. Ins. Co.*, 838 F.3d 1113, 1121 (11th Cir. 2016) (quoting *Connelly v. Metro Atlanta Rapid Transit Auth.*, 764 F.3d 1358, 1363 (11th Cir. 2014)). In considering the sufficiency of the evidence, "'the court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party.'" *McGinnis*, 817 F.3d at 1254 (quoting *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995)). The court bears in mind, however, that, "'[i]t is the jury's task—not [the court's]—to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *McGinnis*, 817 F.3d at 1254 (quoting *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002)).

Parties seeking relief after an unfavorable jury verdict may also request a new trial under Rule 59(a) on the grounds that "the [jury's] verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons,

the trial was not fair . . . and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). Thus, "'in a motion for a new trial the judge is free to weigh the evidence,'" *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir. 1982) (quoting *King v. Exxon Co., U.S.A.*, 618 F.2d 1111, 1115 (5th Cir. 1980)), and "may, in [her] discretion, grant [the motion] 'if in [the judge's] opinion, the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *McGinnis*, 817 F.3d at 1254 (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)).

Finally, the court may alter or amend a ruling under Rule 59(e) if "a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Summit Med. Ctr. of Ala., Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003). Rule 59(e) motions, however, cannot be used "to relitigate old matters, [or to] raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005). Indeed, the Eleventh Circuit has said "a motion to reconsider should not be used by the parties to set forth new theories of law . . .

absent some showing that" the theory was previously unavailable. *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997).

### A. Breach of Contract Claim for Unpaid Royalties

After years of extensive litigation, including two summary judgment rulings and an appeal, the core issue remaining for trial was Pro Emu's claim that NFI breached the parties' contract by failing to pay Pro Emu royalties in March and April 2012. Doc. 258-1 at 2. NFI argued that it was excused from making royalty payments because Pro Emu had already breached the contract by failing to use its best efforts to fill NFI's March 2012 order for emu oil. Doc. 231 at 6–10. At the close of NFI's case-in-chief, Pro Emu moved for a judgment as a matter of law asserting that it lacked both the money and the inventory to supply NFI's request for oil, and that it had accordingly satisfied the contract's "best efforts" requirement. *See* Doc. 264 at 171–73. The court denied the motion, *id.* at 173, which Pro Emu now moves to renew pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. In the alternative, Pro Emu asks for a new trial on this issue pursuant to Rule 59(a). Doc. 258-1 at 9, 11.

### 1. Renewed Request for Judgement as a Matter of Law on the "Best Efforts" Issue

In support of its Rule 50(b) motion, Pro Emu primarily argues that the evidence is undisputed that it lacked the emu oil in March 2012 to supply NFI's order and that, under the Eleventh Circuit's mandate, the contract expressly limited

NFI's remedy to seeking replacement oil from other sources. Thus, Pro Emu argues that its actions constituted best efforts and that, in any event, NFI was not excused from making royalty payments.[2]

The parties generally agree on what the trial evidence showed. To summarize briefly, Pro Emu introduced evidence indicating that, at the time of NFI's March 2012 order for emu oil, it lacked both the oil to fill the order and the money to purchase replacement oil from another source. Doc. 264 at 172–73. The evidence also indicated that Pro Emu did not seek to acquire oil in the spot market via credit, as it subsequently demonstrated the ability to do, did not communicate with NFI regarding the oil shortage beyond stating it was unable to fill the order at the same time it provided NFI notice that it had filed the instant lawsuit, and that it otherwise failed to assist NFI in finding a replacement source for the oil. Doc. 263 at 92–95, 97–100. In its motion, Pro Emu seeks to avoid the import of this undisputed evidence by seeking to read the "best efforts" provision out of the contract by arguing that NFI's sole remedy for Pro Emu's failure to fill an order was to purchase replacement oil in the market. However, this argument is foreclosed by a prior ruling of this court in which Judge William Acker interpreted

---

[2] Pro Emu further argues that the court erred in allowing NFI to present evidence that Pro Emu had oil available in June 2012, months after the period at issue here. *See* Doc. 258-1 at 10. Pro Emu, however, does not provide any legal citations in support of this argument, and, therefore, the court declines to address the issue further. *See United States v. Gupta*, 463 F.3d 1182, 1195 (11th Cir. 2006) (explaining that the court "may decline to address an argument where a party fails to provide arguments on the merits of an issue").

the parties' contract to resolve this very issue explaining that "[P]ro Emu [was] . . . required to use all reasonable efforts in good faith to fulfill NFI's orders for emu oil." Doc. 82 at 8. Accordingly, Judge Acker found that the limitation on NFI's remedies imposed by ¶ 2.2 applied only to "failures to supply emu oil after Pro Emu [had] given its best efforts." *Id.* at 9.

Under the law of the case doctrine, once "a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages [of] the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quotation omitted). Although this doctrine is "discretionary and does not limit a court's power to reconsider its own decisions . . . 'where litigants have once battled for the court's decision, they should neither be required nor without good reason permitted, to battle for it again.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)). The rule serves "important goals vital to just and efficient judicial process, including the provision of an end to litigation . . . and the promotion of consistency in rulings between courts." *Klay v. All Defendants*, 389 F.3d 1191, 1197 (11th Cir. 2004). Indeed, "as matters wend closer to final disposition, stability takes on increased importance." *McSurely v. McClellan*, 753 F.2d 88, 96 (D.C. Cir. 1985) (quotation omitted).

To justify revisiting this long-settled legal issue, Pro Emu must show that Judge Acker's ruling constituted clear error,[3] a showing that it has failed to make. Indeed, Pro Emu had the opportunity to challenge Judge Acker's construction of the contract on appeal, and it apparently elected not to do so.[4] Further, during the trial, one of Pro Emu's executive officers, Andrew Martin, agreed that "an accurate statement of [Pro Emu's] obligations under the contract" was the requirement that Pro Emu "use its best efforts to fulfill all orders as quickly as is reasonably possible." Doc. 263 at 92. Accordingly, NFI's obligation to pay royalties was contingent on Pro Emu's use of its best efforts which Georgia law defines as the "use [of] reasonable diligence as well as good faith in [the] performance of the contract." *Flynn v. Gold Kist, Inc.*, 353 S.E.2d 537, 539 (Ga. Ct. App. 1987) (quotation omitted). NFI, as described, presented evidence showing that Pro Emu did not take any steps, beyond bare notification, to supply the requested oil in March 2012. *See* Doc. 263 at 92–95, 97–100. This evidence is sufficient, particularly when evaluated in favor of NFI as the non-movant, to support a jury

---

[3] *See Klay*, 389 F.3d at 1198 (holding that the law of the case does not bar reconsideration of various issues when "(1) new and substantially different evidence emerges . . . (2) controlling authority has been rendered that is contrary to the previous decision; or (3) the earlier ruling was clearly erroneous and would work a manifest injustice if implemented"). Only the third prong is potentially relevant here as Pro Emu has neither presented the court with new evidence or controlling contrary authority

[4] *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014) (holding that a litigant's failure to advance an issue on appeal constitutes abandonment). In any event, the Eleventh Circuit's opinion is not contrary to Judge Acker's ruling on this issue. *See* Doc. 136-1 at 13 (expressly providing that NFI's obligation to make monthly royalty payments was "subject to [Pro Emu's] 'best efforts' obligation").

verdict finding that Pro Emu failed to use its best efforts to supply NFI's March 2012 order for emu oil. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192 (11th Cir. 2004) (explaining the district court should only enter judgment as a matter of law "when there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue").

### 2. Motion for a New Trial on the "Best Efforts" Issue

Pro Emu also moves for a new trial pursuant to Rule 59(a) on this issue raising three primary contentions of error: (1) that the court improperly instructed the jury regarding the burden of proof; (2) that the court improperly prevented Pro Emu from presenting evidence that NFI did not require the oil it ordered in March 2012; and (3) that the jury's verdict was against the great weight of the evidence. The court addresses each of these contentions in turn.

### a. Whether the Jury was Properly Instructed on "Best Efforts"

Relying on its trial objections and on Judge Acker's previous opinion interpreting the parties' contract, Pro Emu asserts that the court erroneously assigned the burden of proof by instructing the jury that "[y]ou must determine whether Pro Emu has proven, based on the preponderance of the evidence, that it used its best efforts, as defined here, to fulfill NFI's March 2012 orders." Doc. 247

at 8.[5]   Other than its bare assertion of error, however, Pro Emu has failed to

provide the court with any basis in Georgia law for finding that the court's

instructions were erroneous.  *See* Doc. 258-1 at 3–4, 11.  Instead, Pro Emu relies

entirely on a prior ruling in this case in which Judge Acker opined that "Paragraph

2.2 [of the parties' contract], imposes a 'best efforts' standard . . . [leaving] a wide

open door for disagreement between the parties that will not end until after a

prolonged jury trial in which NFI will have the burden of proving that Pro Emu did

not use its best efforts."  Doc. 82 at 30–31.  Of course, in that particular ruling,

Judge Acker was specifically addressing the parties' "cross-motions for summary

adjudication of disputed contract interpretation issues" not the parties' respective

trial burdens, an issue which was not before the court at that time.  *Id.* at 1.  This

renders Judge Acker's statement regarding the proper allocation of the burden of

proof on the best efforts issue mere dicta because resolving the question had no

effect on the court's resolution of the interpretative issues actually before it.  *See*

*United States v. Eggersdorf*, 126 F.3d 1318, 1322 n.4 (11th Cir. 1997) (defining

---

[5] In this circuit, jury instructions are reviewed deferentially and the district court has "wide discretion as to the style and wording employed." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999) (quotation omitted).  Thus the court must "examine the challenged instructions as part of the entire charge, in light of the allegations of the complaint, the evidence presented, and the arguments of counsel, to determine whether the jury was misled and whether the jury understood the issues." *Pate v. Seaboard R.R., Inc.*, 819 F.2d 1074, 1077 (11th Cir. 1987).  "Under this standard, if the jury charge as a whole correctly instructs the jury, even if technically imperfect, no reversible error has been committed." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1543 (11th Cir. 1996).  To grant a new trial on the basis of an erroneous instruction, the instruction must create "a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018) (quotation omitted).

dicta as portions of an opinion that are "not necessary to deciding the case then before [the court]").  And, of course, the court is "not bound by the dicta contained in [its] earlier opinions."  *United States v. Birge*, 830 F.3d 1229, 1233 (11th Cir. 2016).

Moreover, a review of Georgia law belies Pro Emu's contention of error. Indeed, Georgia courts have explicitly held that "[a] plaintiff seeking to enforce an alleged contract has the burden and must show performance on [her] part; otherwise, [she] is not entitled to a verdict against the defendant."  *Jones v. Brawner*, 287 S.E.2d 255, 256 (Ga. Ct. App. 1981); *Clark's Super Gas, Inc. v. Tri-State Sys., Inc.*, 200 S.E.2d 472, 473 (Ga. Ct. App. 1973) (explaining that "[t]he plaintiff[] [has] the burden of proving that [she] performed the contract according to its terms, or for some legal reason such performance on [her] part was as a matter of law excused") (quotation omitted); *Cleveland v. Schwaemmle*, 101 S.E.2d 611, 613 (Ga. Ct. App. 1957) (holding "[w]here the plaintiff bases [her] right to recover upon an express contract . . . [she] cannot recover unless [she] has performed all [her] obligations under the contract") (quotation omitted).  As described above, the parties' contract required Pro Emu to use its best efforts to fill NFI's orders for emu oil.  To the extent that Pro Emu seeks to recover unpaid royalties under the contract, it was required to show that it properly performed its

own obligations, including its obligation to use its "best efforts," as the jury instructions correctly state. Doc. 247 at 8–9.

Also, even assuming that the challenged jury instruction was erroneous, the court is not left with a "substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Simmons*, 879 F.3d at 1162 (quotation omitted). Viewed as a whole, the instructions appropriately guided the jury to the central issue in the case—whether "Pro Emu breached the contract by failing to use its best efforts to supply emu oil to NFI as required under the contract." Doc. 247 at 8. As the instructions explain, if "Pro Emu did not use its best efforts . . . that breach would excuse NFI of performance of its duties . . . [but] if Pro Emu did use its best efforts . . . NFI was also required to perform its obligations under the contract." *Id.* at 8–9. "[T]here is no error even though an isolated clause may be inaccurate . . . or otherwise subject to criticism" so long as "the instructions, taken together, properly express the law applicable to the case." *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 585 (11th Cir. 2013) (quotation omitted). When read as a whole, the instructions, along with the interrogatory, which asked only if "Pro Emu fail[ed] to use its best efforts to fulfill NFI's orders for emu oil in March 2012," doc. 250, provided the jury with the appropriate legal guidance as to the resolution of the best efforts issue. As such, the court cannot find, "in view of the allegations of the complaint, the evidence presented, and the

arguments of counsel," that "the jury was misled." *Nat'l Distillers & Chem. Corp. v. Brad's Mach. Prods., Inc.*, 666 F.2d 492, 497 (11th Cir. 1982) (quotation omitted).

Finally, any potential error was harmless. Both Pro Emu and NFI presented affirmative evidence in support of their respective positions. Pro Emu submitted evidence showing that it had no money to purchase oil and lacked the inventory to fill NFI's order on its own, and argued, on that basis, that it had fulfilled its best efforts obligation. Doc. 264 at 219–23. In contrast, NFI presented significant, affirmative evidence indicating that Pro Emu failed to take any steps, beyond notification, to assist NFI in filling the March 2012 order. Doc. 263 at 92–95, 97–100. Even assuming that NFI had the burden on this issue, the evidence at trial was sufficient for the jury to find that NFI established by a preponderance of the evidence that Pro Emu did not use its best efforts to supply the March 2012 order. Therefore, any error purportedly flowing from the instructions was harmless and had no impact on Pro Emu's substantive rights. *See Delta Health Grp. Inc. v. Royal Surplus Lines Ins. Co.*, 327 F. App'x 860, 866 (11th Cir. 2009) (finding that erroneous instruction on burden of proof was harmless error based on the evidence presented at trial).

### b. *Improper Exclusion of Evidence*

Pro Emu next argues that the court erred in preventing it from presenting evidence showing that NFI's March 2012 order was excessive because the contract only allowed NFI to order enough emu oil to satisfy its reasonable sixty day requirements. Again, this argument is foreclosed by Judge Acker's prior interpretation of the contract. In his order resolving contested issues of contractual interpretation, Judge Acker expressly addressed "[t]he quantity of emu oil that NFI is permitted to order," noting that although ¶ 2.2 of the original agreement limited NFI to ordering only oil reasonably necessary to fulfill its requirements for sixty days, § 3 of the fourth amendment to the contract modified ¶ 2.2 to allow NFI to purchase oil "beyond the amount expressly contemplated in the [original] agreement." Doc. 82 at 26–27, 28. As Judge Acker then explained, "[f]rom March 11, 2008 until the present, NFI could order . . . any amount of emu oil and emu fat that Pro Emu has available for sale if it [gave] Pro Emu notice of its desires before the excess is sold." *Id.* at 32.[6] Based on this ruling, evidence pertaining to NFI's reasonable sixty day requirements for emu oil was no longer relevant to Pro Emu's obligations under the contract. Therefore, the law of the case doctrine forecloses further consideration of this argument, particularly in light of Pro Emu's failure to

---

[6] Pro Emu does not appear to have appealed this issue, and the Eleventh Circuit's ruling does not directly address it. To the extent the Circuit mentioned the effects of the Fourth Amendment on the contract at all, it explained only that the Amendment provided that Pro Emu could not sell its oil to third parties without NFI's consent, "which was to be granted if Defendant could not use all of Plaintiff's supply." Doc. 136-1 at 5–6.

demonstrate that the "earlier ruling was clearly erroneous and would work a manifest injustice if implemented." *Klay*, 389 F.3d at 1198.[7]

### c. *Sufficiency of the Evidence*

Finally, Pro Emu argues that the jury's verdict went against the great weight of the evidence which showed that Pro Emu had no money to purchase additional oil, no supply of oil on hand, and no emus ready for processing. Although "in a motion for a new trial the judge is free to weigh the evidence," Pro Emu's regurgitated argument fares no better under this more forgiving standard. *Rabun*, 678 F.2d at 1060 (quotation omitted). Again, the contract required Pro Emu to use its best efforts to fill NFI's March 2012 order. Therefore, under Georgia law, Pro Emu was obligated to employ "reasonable diligence as well as good faith in [its] performance of the contract." *Flynn*, 353 S.E.2d at 539 (quotation omitted). NFI presented unrebutted testimony that cast doubt on Pro Emu's reasonable diligence, including that Pro Emu did not attempt to secure the needed oil from other sources, and that Pro Emu failed to provide any updates on the status of the March 2012

---

[7] Pro Emu also cites the U.C.C. to argue, basically, that NFI was not free to vary its orders for emu oil beyond a certain reasonable level. Doc. 258-1 at 13–14. As explained above, however, the court has already interpreted the parties' contract to allow NFI to order Pro Emu's entire output so long as it provided notice. Therefore, the contract, rather than the cited U.C.C. provision, controls this issue. *See D.L. Lee & Sons, Inc. v. ADT Sec. Sys., Mid-South, Inc.*, 916 F. Supp. 1571, 1557 (S.D. Ga. 1995) (explaining that in Georgia "parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy"); *See also Golden Peanut Co. v. Hunt*, 416 S.E.2d 896, 898 (Ga. Ct. App. 1992) (applying the U.C.C. and explaining that the contract alone is looked to for meaning in the absence of missing terms or ambiguities).

order or to assist NFI in filling the order via a third party. Docs. 263 at 92–95, 97–100; 264 at 65–66, 77–80. Taken together, this evidence was more than sufficient to support the jury's verdict.

"[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Hewitt*, 732 F.2d at 1556 (quotation omitted). Although, hypothetically, a jury could have concluded that Pro Emu's inability to supply NFI's order based on its lack of inventory and funds constituted best efforts, the vast weight of the evidence showed that Pro Emu did virtually nothing in response to NFI's March 2012 order for emu oil. On balance, the great weight of the evidence favored NFI, and the court declines to "substitute [its] own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury." *Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987). Accordingly, the court concludes that Pro Emu has failed to carry its burden of showing that a new trial is warranted on the best efforts issue.

### B. Underpayment of Royalties Based on Off-the-Book Sales Claim

Pro Emu also argues that the court erred in granting NFI's motion for judgment as a matter of law on Pro Emu's claim related to alleged off-the-book sales. Pro Emu primarily contends that: (1) the Eleventh Circuit's mandate required the court to submit this claim to the jury; and (2) the court ignored or

improperly excluded evidence which supported Pro Emu's claim and would have enabled it to avoid a directed verdict.

### 1. Did the Court's Entry of Judgment as a Matter of Law Violate the Eleventh Circuit's Mandate

In his previous summary judgment ruling in this case, Judge Acker found that Pro Emu had failed to provide sufficient evidence to support its claim for royalties based on alleged off-the-book sales, explaining that Pro Emu had provided "no evidence of concealed sales other than its conjectural, best-case-scenario mathematical calculation." *See* Doc. 120 at 28. The Eleventh Circuit reversed, despite noting the parties' failure to clearly articulate the evidence supporting their respective positions, ruling that the off-the-book sales claim presented a disputed issue of material fact. Doc. 136-1 at 15–16. This ruling primarily relied on the Circuit's conclusion that Pro Emu had presented unrebutted evidence that a gallon of emu oil yielded more product than NFI claimed and that neither side had quantified the amount of product lost to waste or other non-saleable uses, i.e., promotional samples. *Id.* at 15–16. Accordingly, Pro Emu argues that because the standard for granting a motion for summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), the court was bound at trial to reach the same conclusion as the Eleventh Circuit.

Pro Emu, however, overlooks the significant procedural difference between the two types of motions: "'summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial *and decided on the evidence that has been admitted*.'" *Id.* at 251 (quoting *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983) (emphasis added)). When ruling on a motion for judgment as a matter of law, the court considers whether a "legally sufficient evidentiary basis exists for a reasonable jury to find against the moving party and [whether] the facts and inferences available in the record point so overwhelmingly in favor of the moving party that reasonable people could not arrive at a contrary verdict." *Hall v. Siemens VDO Auto.*, 481 F. App'x 499, 502 (11th Cir. 2012) (citing *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 421 F.3d 1169, 1177 (11th Cir. 2005)). In other words, at trial, Pro Emu bore its traditional burden of presenting "evidence that would permit a reasonable jury to find in [its] favor on each and every element of [its] claim.'" *Bogle v. Orange Cty. Bd. of Cty. Comm'rs*, 162 F.3d 653, 659 (11th Cir. 1998). Because "there must be a substantial conflict in [the] evidence" presented at trial to defeat a motion for judgment as a matter of law, *Ledbetter*, 421 F.3d at 1177 (quotation omitted), surviving summary judgment does not relieve Pro Emu of its ordinary responsibility of proving its claim by a preponderance of the evidence.

As the court explained on the record, Pro Emu failed to carry this burden with respect to its off-the-book sales claim.  At trial, Pro Emu relied solely on two pieces of documentary evidence, NFI's sales figures from 2005 through 2012 and a NFI purchase order from 2002 which provided data approximating the amount of product producible per gallon of emu oil.  *See* Doc. 264 at 144–51, 159, 163–65.  The 2002 purchase order represents the crux of the issue now before the court because that document is the only evidence in the record providing information pertaining to production.  *Id.* at 154–57, 159–60,164–65; Doc. 248-1 at 1–5.  But, the purchase order explicitly states that the included production figures are mere approximations, and Pro Emu has not presented any evidence explaining the approximations or their expected relationship to actual production.  Docs. 248-1 at 1–5; 264 at 163–64.  Moreover, the approximations are from 2002, years before the relevant time period in this case, and were provided by NFI rather than the processor.  Docs. 248-1 at 1–5; 264 at 150–51, 153–54.  Indeed, Pro Emu failed to provide the court with any approximations developed by an actual emu oil processor, failed to present evidence or testimony linking the 2002 approximations to the relevant time period or processing company, and otherwise failed to present any evidence explaining NFI's approximations and their potential application here.  Doc. 264 at 161–65.  And, most critically, Pro Emu failed to identify accounting irregularities of any sort, failed to present expert testimony regarding expected

sales figures, and failed to produce any other evidence related to actual production numbers. *Id.* In contrast, NFI presented unrebutted testimony regarding the level of waste typically generated during the production process and its aggressive marketing strategy utilizing free samples and other product promotion methods which resulted in non-saleable uses of product. *Id.* at 85–95, 163–65.[8]

A showing of "a complete absence of facts to support a jury verdict" is not necessary for the movant to prevail on a motion for judgment as a matter of law. *Ledbetter*, 421 F.3d at 1177 (quotation omitted). As the non-movant, Pro Emu must create a substantial conflict in the evidence, and is precluded from relying on "a mere scintilla of evidence [to] create a jury question." *Id.* (quotation omitted). Moreover, even though Pro Emu is entitled to all reasonable inferences, "'an inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation.'" *Carlson v. United States*, 754 F.3d 1223, 1229 (11th Cir. 2014) (quoting *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982)). Based on the

---

[8] Pro Emu's argument that NFI was required to present evidence specifically quantifying any missing units is misplaced. As the party with the burden, to avoid a directed verdict, Pro Emu had to present, at ab absolute minimum, enough evidence to show that more product was producible than reflected in the sales figures. It is of no moment that NFI never quantified the exact amount of waste attributable to its production process or used in samples and other non-saleable items. Unlike the record before the Eleventh Circuit on summary judgment, Pro Emu failed to provide more than a scintilla of evidence that NFI's yield of product per gallon was lower than it should have been. Such a showing is inadequate to survive a motion for judgment as a matter of law. *See Ledbetter*, 421 F.3d at 1177

trial record, despite litigating this case for over five years, Pro Emu has failed to

produce even the most basic evidence supporting its off-the-book sales claim.

## 2. Did the Court Improperly Exclude Evidence Substantiating Pro Emu's Claim of Off-the-Book Sales

Pro Emu also argues that the court improperly excluded evidence that would

have allowed it to carry its burden with respect to the off-the-book sales claim.

The court disagrees.

### a. Doug Johnson's Deposition Testimony

Pro Emu sought to introduce the deposition testimony of Douglas Johnson,

the operator of one of the two labs initially producing emu oil based products for

Pro Emu. Among other things, Johnson testified that his lab was able to produce

362 units of 4 ounce cream per gallon of emu oil. Doc. 107-10 at 5. Critically,

however, Johnson also stated that he had not worked with Pro Emu since 2002,

doc. 116-3 at 11, and, as such, his company did not produce emu oil during the

time period at issue in this case.[9]

---

[9] Pro Emu cursorily suggests, without citation, that Johnson also testified that all labs using the same material and process for producing product should have similar production values. Doc. 258-1 at 22. Even if Johnson's assertion is true, no trial witness provided any specific information establishing that the lab at issue here used the same process, the same equipment, or the same formula as Johnson's company. While Andrew Martin, a Pro Emu executive, did summarily testified that all of these factors remained constant, no foundation for that testimony was ever offered. Doc. 263 at 104. Indeed, Martin had never even visited the production lab NFI used during the relevant time period. *See* Doc. 262 at 124. And, both Martin and another former Pro Emu executive, Chris Binkley, admitted that they did not know the manufacturing capabilities of the lab at issue here and had no relationship with the that entity. Doc. 263 at 81–83, 106–07, 185. Moreover, Martin's unsupported testimony was incorrect in at least one respect as the formula used to produce emu-based products did change between 2002

Pro Emu's attempts to show error in the court's preclusion of Johnson's testimony face two hurdles. First, the court never precluded Pro Emu from seeking to introduce Johnson's deposition. The court elected to instead carry "over Mr. Johnson's testimony as to his calculations and to revisit the issue based on . . . NFI's records." Doc. 263 at 16. According to NFI, Pro Emu never again sought to introduce the challenged testimony during its case-in-chief, and never requested a final ruling on the admissibility of this testimony—a contention that Pro Emu does not appear to contest. Further, prior to the court's ruling on NFI's request for a judgment as a matter of law, Pro Emu asserted in open court that its off-the-book sales claim was based solely on the two documentary exhibits previously discussed, and that there was only "documentary evidence. No testimony" in support of the claim. Doc. 264 at 164–65. In other words, it seems Pro Emu abandoned any attempt to rely on Johnson's testimony at trial. As such, even if a decision to exclude Johnson's testimony would have constituted clear error or manifest injustice, the court never made a final ruling on the issue, and Pro Emu is procedurally barred from raising under Rule 59e arguments that were previously available to it. *Dyas v. City of Fairhope*, No. 08-0232-WS-N, 2009 WL 5062367, at *3 (S.D. Ala. Dec. 23, 2009) (explaining motions to reconsider "do not exist to permit losing parties to . . . provide evidence or authority previously omitted").

---

and 2006 when the concentration of emu oil was apparently reduced from 10% to 7%. *See* Doc. 258-1 at 26.

Second, Pro Emu cannot show that Johnson's testimony is relevant. Relevant evidence means evidence having "any tendency to make a fact more or less probable than it would be without the evidence; [so long as] the fact is of consequence in determining the action." Fed. R. Evid. 401. "Evidence not meeting this criterion is inadmissible." *United States v. Reed*, 700 F.2d 638, 642 n.4 (11th Cir. 1983). In the absence of evidence establishing that Johnson's company used a comparable production process to the production company at issue here, or knew anything about that company's production standards, the court fails to see any relationship between Johnson's testimony about his company's process and the issues in this case. Any possible relevance necessarily hinges on an attenuated chain of inference and speculation totally unmoored from the facts in the trial record. The court would need to conclude that the production company at issue here used virtually identical manufacturing processes, production guidelines, equipment, and formulas, as those used by Johnson's company years earlier, to enable a meaningful comparison of production values between the two entities. Quite simply, no evidence was presented at trial to substantiate such a conclusion, and Pro Emu has again failed to direct the court's attention to such evidence here.[10]

---

[10] Pro Emu also argues that NFI should be judicially estopped from seeking to exclude Johnson's testimony because NFI previously asserted in its summary judgment briefing that this testimony was the only "piece of evidence" establishing the amount of product producible per gallon of emu oil. Doc. 258-1 at 23. But this statement does not imply that NFI believes Johnson's testimony is reliable evidence. Rather, NFI was arguing that testimony from a different witness was speculative as it was not based on the only evidence of actual production in

*b. Exclusion of Andrew Martin's Opinion Testimony Regarding Unreported Sales*

Pro Emu also argues that Andrew Martin, its owner-operator, would have presented testimony to establish the number of missing units to support its off-the-book sales claim. To do so, Pro Emu asserts that Martin would have used the documentary evidence discussed previously to determine the number of total units producible and then to subtract total sales from that amount revealing the number of missing units allegedly sold off-the-books. Doc. 268-1 at 24–28. Pro Emu argues that because this testimony amounts to "simple arithmetic," Martin was not giving expert testimony subject to disclosure under the Federal Rules of Civil Procedure. The court disagrees.

First, this argument is procedurally improper. Rule 59(e) prohibits parties from using motions brought under the rule "to relitigate old matters, [or to] raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc.*, 408 F.3d at 763. Indeed, generally, "parties are not entitled to 'two bites at the apple.'" *Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990) (quoting *Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2 d 1237, 1239 (11th Cir. 1985)). Here, NFI moved to exclude Martin's opinion testimony on this issue before the originally scheduled trial date

---

the record, Johnson's deposition. Doc. 107 at 22. This assertion does not amount to an admission that Johnson's deposition testimony is relevant to this case, or that he is the only possible source for ascertaining actual production values.

in October 2017.  *See* Doc. 190.  In response, Pro Emu argued, in cursory fashion, that Martin was not subject to any disclosure requirement because he was not offered as an expert witness and was not expressing an opinion.  Doc. 210 at 1–4. During a subsequent motions hearing, the court granted NFI's motion, subject to a showing from Pro Emu that it had disclosed Martin, or that Judge Acker had previously ruled on the admissibility of Martin's testimony.  Doc. 227 at 26–27, 29.  Pro Emu made neither showing at trial, and it is improper for it to seek to do so now in a post-trial motion.  *See, e.g.*, *Lussier*, 904 F.2d at 667. [11]

Second, Pro Emu has failed to demonstrate that the decision to exclude Martin's testimony was clearly erroneous.  "[A] party must disclose to the other parties the identity of any witness it may use at trial to present" expert testimony.

---

[11] The court also rejects Pro Emu's contentions that either this court or the Eleventh Circuit had previously ruled on the admissibility of Martin's testimony.  In its summary judgment motion in 2014, NFI argued that Pro Emu's claim for off-the-book sales was not supported by admissible evidence because Pro Emu failed to properly disclose Martin as a damages witness.  *See* Doc. 107 at 26–27.  Pro Emu failed to respond to this argument, *see* doc. 115, and Judge Acker granted NFI's motion, finding that Pro Emu had not created a genuine issue of material fact regarding alleged off-the-book sales.  *See* Doc. 120 at 27–28.  In making this ruling, Judge Acker did not need to reach the admissibility of Martin's testimony.  *See* *Macuba v. Deboer*, 193 F.3d 1316, 1323–24 (11th Cir. 1999) (explaining that evidence submitted at summary judgment need only be reducible to an admissible form at trial). Accordingly, because Judge Acker never reached the issue, Pro Emu's reliance on the summary judgment ruling is misplaced.  A review of the Eleventh Circuit's opinion also belies Pro Emu's assertion that the Circuit ruled that Martin could offer the testimony in question.  *See Generally* Doc. 136-1.  And, even if the Eleventh Circuit in some attenuated sense relied on Martin's testimony, which it does not appear to have done, this court is not subsequently precluded from ruling on the admissibility of that testimony at trial.  Indeed, Pro Emu retains the burden of introducing the proffered evidence in admissible form.  *See White v. Chicago Pneumatic Tool Co.*, 994 F. Supp. 1478, 1481 (S.D. Ga. 1998) (explaining that "[t]he proponent[] of the evidence [has] the burden of proving admissibility of the testimony by a preponderance of the evidence").

Fed. R. Civ. P. 26(a)(2)(A). Even if an expert report is not required, the Rule 26(a)(2) "disclosure must state: (i) the subject matter on which the witness is expected to present evidence . . . and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). Pro Emu failed to provide such a disclosure and, accordingly, it "is not allowed to use that information or witness . . . at a trial, unless the failure to disclose was substantially justified or harmless." Fed. R. Civ. P. 37(c). To get around this failure, Pro Emu argues, in part, that it adequately disclosed the basis for Martin's testimony through its amended complaint, which first articulated its claim for damages from off-the-book sales. *See* Doc. 88-1 at 1–2. But, the amended complaint does not identify Martin or link him with Pro Emu's off-the-books sales claim. *Id.* Therefore, it cannot act as a proper disclosure under Rule 26.

Third, even if Martin is a lay witness that is not subject to the expert disclosures, he is still subject to the disclosure requirements of Rule 26(a)(1)(A)(i). Pro Emu has not shown that it properly disclosed Martin's damages calculations as part of its initial disclosures or in any supplemental disclosure. *See* Rule 26(a)(1) (requiring the disclosure of "each individual likely to have discoverable information—along with the subjects of that information"). Moreover, lay witnesses may give opinion testimony only if that testimony is limited to opinions or inferences which are "(a) rationally based on the witness's perception; [and] (b)

helpful to clearly understanding the witness' testimony or to determining a fact in issue." Fed. R. Evid. 701.

Certainly, in the business context, an executive or officer of a firm may offer opinions "about lost profits or other questions about damages, based on his or her personal knowledge of the company's records." *Ga. Operators Self-Insurers Fund v. PMA Mgmt. Corp.*, 143 F. Supp. 3d 1317, 1337 (N.D. Ga. 2015); *see also In re Merritt Logan, Inc.*, 901 F.2d 349, 360 (3d Cir. 1990) (affirming decision to admit testimony about lost profits from company executives based on their "personal knowledge of [the] business"). But, Rule 701 incorporates the "familiar requirement of first-hand knowledge or observation." *United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011) (quotation omitted). Accordingly, "[w]here the lay witness's testimony is based upon perceptions, which are insufficient to allow the formation of an opinion that would be helpful to an understanding of the facts of the case but, instead, merely expresses the witness's beliefs, then the opinion testimony should be excluded." *Hartzell Mfg., Inc. v. Am. Chem. Techs., Inc.*, 899 F. Supp. 405, 409 (D. Minn. 1995) (citing *United States v. Cortez*, 935 F.2d 135, 139–40 (8th Cir. 1991).

Here, the documentary evidence presented at trial, which Martin would purportedly summarize or use as the foundation for his "basic arithmetic," is wholly inadequate, standing alone, to establish NFI's actual production figures

during the relevant time period. Further, Martin stated in his deposition that he does not know the amount of product producible per gallon of emu oil, and admitted that he lacks the qualifications to independently make such a determination. *See* Doc. 226-2 at 13–14, 18–20, 29. Martin's testimony, therefore, would not have assisted the jury in light of his repeated admissions that he lacks any first-hand knowledge of the production process. Indeed, to establish the existence of unreported off-the-book sales and the amount of those sales, Martin would need to make inferences from the evidence "grounded either in experience or specialized knowledge." *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1198 (3d Cir. 1995). Martin lacks both necessary qualifiers.

Finally, Martin's testimony would have had no bearing on the court's decision to grant NFI's motion for judgment as a matter of law. As represented by Pro Emu, Martin's testimony would have consisted of his examination of the documentary evidence showing the approximate amount of units producible per gallon of emu oil, the number of gallons of oil provided, and the total number of units sold to extrapolate the missing number of units. *See* Doc. 258-1 at 26-27, 31–32. Taking Pro Emu at its word that this calculation amounts to "simple arithmetic," it still fails to resolve the problem with the underlying documentary evidence Martin's testimony relies on, namely that, as discussed, the evidence fails to establish actual production numbers during the relevant time period and, in any

event, has no bearing on whether NFI did, in fact, fail to properly record sales. *Id.* at 25. In other words, the foundation of Martin's opinion testimony with regard to off-the-book sales was already before the court, and, for the reasons already discussed, it was insufficient to meet Pro Emu's burden of presenting "evidence that would permit a reasonable jury to find in [its] favor on each and every element of the claim." *Bogle*, 162 F.3d at 659. Thus, the court's exclusion of Martin's testimony was immaterial and certainly does not suffice to show the "manifest injustice" necessary to set aside the court's dismissal of Pro Emu's wholly unsubstantiated claim for off-the-book sales.

### 3. Exclusion of Other Relevant Evidence

Pro Emu also raises a litany of other evidentiary objections, without citation to supporting authority, *see* doc. 258-1 at 35–37, based on alleged errors in the court's denial of Pro Emu's requests to: (1) inform the jury that NFI failed to produce documents in discovery; (2) introduce evidence regarding the parties 2002 Operating Agreement and the related letter of intent; and (3) introduce testimony and evidence related to NFI's accounting practices and the parties initial relationship with respect to licensing and mass marketing. None of these contentions establish error.

*a. Preclusion of Evidence Related to Alleged Discovery Noncompliance*

During the discovery period, which ended in April 2014, doc. 103, the parties had ample opportunity to raise issues related to discovery and their respective obligations under the Federal Rules of Civil Procedure. In fact, in 2012, the parties filed motions to compel, which the court granted, doc. 59 at 1–2, and, in 2013, Pro Emu filed another motion to compel, which the court denied. *See* Doc. 101 at 1–3. Thereafter, Pro Emu failed to raise any other discovery issues with the court, despite the court's express invitation that it do so at the close of the discovery period. *Id.* at 2–3. Therefore, no articulable basis exists to allow Pro Emu to argue to the jury that NFI purportedly failed to comply with its discovery obligations.

*b. Preclusion of Evidence Relating to the Letter of Intent*

The court is confounded by Pro Emu's insistence that the 2002 letter of intent is relevant to the issues in this case. As NFI points out, the 2003 contract expressly superseded the 2002 letter of intent. Doc. 82 at 23. Moreover, the remaining claims at trial were straightforward, as even Pro Emu admits. Indeed, the only issues still before the court at the time were: (1) Pro Emu's claim for unpaid royalties from March 2012; (2) Pro Emu's claim for damages flowing from off-the-book sales and a corresponding underpayment in royalties; and (3) NFI's claim for overpayment on barrels of emu oil from 2007 and 2008. Doc. 258-1 at

2–3. None of these claims were based on the language of the 2002 letter of intent, and instead exclusively involve the parties' 2003 contract and its subsequent amendments. Therefore, the letter of intent and the parties' reasons for initially entering into a business relationship in 2002 had no relevance to the claims presented at trial. *See* Fed. R. Evid. 402 (noting that "[i]rrelevant evidence is not admissible").

### c. Preclusion of Licensing Issues

Details related to the parties' license agreement similarly had no bearing on the straightforward breach of contract issues remaining for decision at trial. Moreover, Pro Emu has failed to specifically identify the basis for its objections to the court's purportedly erroneous rulings with respect to the decision to prevent Pro Emu from questioning Larry Chriscoe regarding various NFI valuation issues. Doc. 258-1 at 36–37.[12]  As to these issues, therefore, Pro Emu has failed to show "clear error or manifest injustice" as required to alter or amend the judgment pursuant to Rule 59(e). *Summit Med. Ctr.*, 284 F. Supp. 2d at 1355

---

[12] Pro Emu includes a single sentence, again without citation, that Georgia's U.C.C. statute of limitations bars NFI's claim for overpayments in 2007 and 2008. Doc. 258-1 at 37. The court declines to develop this position on Pro Emu's behalf. *See Gupta*, 463 F.3d at 1195 (explaining that the court "may decline to address an argument where a party fails to provide arguments on the merits of an issue"). This case was litigated for over five years, and Pro Emu failed to plead a limitations defense, doc. 231 at 10, raising this argument for the first time at trial. *See* Doc. 115 at 30–31 (acknowledging that Pro Emu owes NFI the amount of NFI's overpayments). Accordingly, the court considers the defense abandoned. Indeed, even if Pro Emu had pled a limitations defense, because "it did not include [the] defense[] in its . . . opposition to the . . . motion for summary judgment . . . [the] defense[] [was] abandoned." *United States v. Kafleur*, 168 F. App'x 322, 327 (11th Cir. 2006).

# CONCLUSION AND ORDER

After years of hotly contested litigation, Pro Emu only produced two pieces of documentary evidence to support its off-the-book sales claim at trial. This evidence did not consist of actual production information or comparable sales or production data, and Pro Emu failed to introduce any expert testimony or documentary evidence to establish the amount of product derivable from a gallon of emu oil. Moreover, Pro Emu failed to produce any evidence from any source to suggest that NFI actually made off-the-book sales in the first instance. At trial, Pro Emu had to "present evidence that would permit a reasonable jury to find in [its] favor on each and every element of [its] claim[s].'" *Bogle*, 162 F.3d at 659. None of the evidence that the court excluded has any bearing on these critical issues, and the attenuated inferences and speculation Pro Emu seeks to rely on to meet its burden are not reasonable. *See Carlson*, 754 F.3d at 1229 ("an inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation") (quotation omitted). Therefore, for all the foregoing reasons, Pro Emu's motion to alter, amend or vacate directed verdict and interlocutory orders, renewed motion for judgment as a matter of law and/or motion for a new trial, doc. 258, is **DENIED** in its entirety.

NFI's request for attorney's fees incurred in responding to Pro Emu's motion is also **DENIED**.  *See* Doc. 273 at 26–27.[13]

DONE the 31st day of May, 2018.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[13] NFI's Motion to Substitute Exhibit, doc. 274, is **MOOT**.